Filed 3/12/25  P. v. Lopez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL LOPEZ,<br><br>Defendant and Appellant. | F088380<br><br>(Super. Ct. No. CF84313768)<br><br>OPINION |

-ooOoo-

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  James A. Kelley, Judge.

Steven A. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the State Attorney General, Sacramento, California, for Plaintiff and Respondent.

-ooOoo-

---

\* Before Hill, P. J., Levy, J. and Detjen, J.

## INTRODUCTION

Petitioner Rafael Lopez petitioned the trial court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for second degree murder. The trial court held an evidentiary hearing and denied the petition after finding petitioner was the actual killer.

Appointed counsel has filed a brief under the authority of *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), requesting that this court conduct an independent review of the record. Petitioner filed a supplemental letter brief arguing his plea was coerced and no evidence supports his conviction.

We have considered petitioner's arguments and independently reviewed the record, and we affirm the trial court's order.

## FACTUAL BACKGROUND

On May 3, 1984, Julio Fernandez died after being struck in the head with a board or stick during an altercation with petitioner. Multiple eyewitnesses testified at the preliminary hearing regarding the incident.

On the date of the incident, several men were living together at a home in Fresno. Fernandez stayed at the house off and on but had not stayed there for four or five days. Petitioner and his codefendant, Miguel Perez,[2] had been living in the living room for about 10 to 12 days. A few days before the incident, petitioner and Fernandez fought over $10 that petitioner owed Fernandez. The night before the incident, petitioner borrowed $10 from Osvaldo M.[3] to repay Fernandez.

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 has been renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

[2] At the hearing, witnesses identified Perez by various nicknames. For clarity, we refer to him as Perez. Perez is not a party to this appeal.

[3] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

At about 3:00 or 3:30 a.m. on May 3, 1984, Ignacio R. was sleeping when he heard Fernandez calling him for help. Ignacio went into the living room, where he saw petitioner trying to enter a bedroom where Fernandez and two other men were located. Ignacio held petitioner back and took from him a wooden board he was holding. Petitioner ran out to the back patio. Fernandez came out of the room, took the board that Ignacio had retrieved from petitioner, and went to the street to leave.

Petitioner ran out to the street with another board or stick and he and Fernandez began fighting. Petitioner asked Perez to assist him. Perez came toward the fray with a piece of wood and Ignacio tried to prevent him from coming further.

Osvaldo and Jose R. were in a parked car near the house when Osvaldo heard a commotion and saw petitioner, Perez, Fernandez, and Ignacio in the front yard. Petitioner had a "fat stick," Fernandez had a "small board," and Perez had a "big stick." Osvaldo saw petitioner hit Fernandez five times around the back left side of his head and Fernandez fell down. Jose saw petitioner hit Fernandez once. Perez was not involved in hitting Fernandez.

Petitioner put his hand in Fernandez's pocket and took his car keys. Osvaldo ran to petitioner and told him to take Fernandez to the hospital. Petitioner said he would do so. Petitioner opened the trunk and suggested putting Fernandez in but Perez said they would put him in the back seat. Petitioner and Perez put Fernandez into the backseat and left, saying they were going to take him to the hospital.

Between 9:00 and 10:00 that morning, petitioner drove Fernandez's car to Osvaldo's house. Petitioner reported that he had killed and buried Fernandez. He tried to sell Osvaldo a stereo belonging to Fernandez for $60. He also told Osvaldo that he found $1,500 in the car and that he was leaving that night for Mexico. He offered to sell Osvaldo the car for $400. Petitioner showed Osvaldo $10 in cash that he had on his person.

3.

At around 10:30 a.m., petitioner returned to the house where the fight occurred, driving Fernandez's car. Jose, Ignacio, and Gustavo D. were present at the house. According to Jose, petitioner stated Fernandez asked petitioner not to kill him and told petitioner there was money in the trunk of the car. Petitioner looked for the money but did not find it. Petitioner stated that Fernandez had a lot of money, but he only took $1.40 from him, which he used to buy soda. When he and Perez did not find the money, they hit Fernandez and then went to the river to dump him. However, when they arrived at the river, they believed Fernandez was already dead. Petitioner then buried Fernandez out in a field where no one would find him.

According to Ignacio and Gustavo, petitioner stated that he had Fernandez tied up somewhere and was punishing him. Petitioner complained to Ignacio about Fernandez asking him to repay $10 when, the day before, petitioner saw Fernandez count more than one thousand dollars. Petitioner reported to Ignacio that Fernandez offered him money in exchange for his life and told petitioner his money was in the trunk of his car. However, petitioner looked for the money and did not find it. Ignacio told petitioner he should release Fernandez and petitioner left.

Petitioner came back to the house again around 3:00 or 4:00 in the afternoon and spoke with Osvaldo, Ignacio, Jose, Gustavo, and other men who were present. Gustavo asked petitioner if he still had Fernandez tied up and where Fernandez was located. Petitioner reported that they had already killed and buried Fernandez and did not want to be asked further questions or there would be problems. According to Gustavo, petitioner stated that Perez was the one who ultimately killed Fernandez.

Osvaldo, Ignacio, Jose, and Gustavo reported the murder to Fresno Police Detective J. Moralez later that night. Moralez also spoke with petitioner and Perez in relation to this case. Moralez went with Perez to an orchard near the river, and later to a vineyard, where Moralez located a gravesite eight or nine feet from the roadway, containing Fernandez's body.

4.

The forensic pathologist who performed an autopsy on Fernandez testified that Fernandez had a blue cloth around his eyes and head, and a rope around his neck. Both of his wrists were tied together behind his back, and the rope was connected to the rope around the neck. He had bruises around his face and eyes, scratches on his legs, and an eight-inch-long skull fracture from the top left side extending down on the right to the base of the skull. The pathologist opined that such a fracture would be caused by something other than a human fist or leg. The fracture would not necessarily cause immediate death or loss of consciousness. If a person with such injury lost consciousness, they could regain consciousness again before death. The pathologist opined that Fernandez died from contusions of the brain due to the skull fracture. He was likely dead by the time he was buried. However, if he had been taken immediately to a good trauma center after the injury, his chances of survival would have been better than 50 percent.

## PROCEDURAL HISTORY

"In an information filed June 27, 1984, petitioner was charged with murder (§ 187; count one), robbery (§ 211; count two), and kidnapping (§ 207, subd. (a); count three). As to count one, it was alleged petitioner used a deadly weapon, to wit a wooden board or stick, in the commission of the offense (§ 12022, subd. (b)). Additionally, the information alleged the murder was committed during the course of a robbery and kidnapping (§ 190.2, subd. (a)(17)).

"On January 8, 1985, petitioner pled guilty to second degree murder and admitted the allegation that he had committed the offense with a wooden board or stick. The remaining counts and allegations were dismissed. Petitioner was thereafter sentenced to a term of 16 years to life.

"On June 18, 2021, petitioner filed a handwritten petition for resentencing pursuant to section 1172.6. On April 13, 2022, the court denied the petition without prejudice on procedural grounds because it did not contain a declaration signed under penalty of perjury as required under section 1172.6; even if construed as a declaration, the petition did not adequately state, nor was it shown, that petitioner was eligible for relief;

and service of the petition was not made on all parties required under section 1172.6.

"On April 25, 2022, petitioner filed a second petition for resentencing pursuant to section 1172.6. Petitioner left several boxes on the form petition unchecked. It does not appear the court ruled on the petition.

"On July 11, 2022, petitioner filed a third petition for resentencing pursuant to section 1172.6, and again left several boxes on the form petition unchecked. On July 29, 2022, the court denied the petition without prejudice on the ground petitioner failed to check boxes necessary to establish a prima facie showing of resentencing eligibility.

"On September 8, 2022, petitioner filed a fourth form petition for resentencing, on which he checked all necessary boxes. On November 7, 2022, the court filed an order noting that the original sentencing judge had retired and was unavailable, and a different judge was assigned to rule on the petition. Another part of the same order noted that petitioner had requested appointment of counsel, and a box was checked to indicate the court had appointed the Public Defender's office to represent petitioner. However, this portion of the order was not signed, and neither petitioner nor the Public Defender was provided notice of the order.

"It appears no further action was taken on the petition until March 16, 2023. On that date, the court issued an order addressing what it described as petitioner's third petition for resentencing. The court determined 'that the bases for this third petition [are] identical to that of the previous two petitions. The court therefore construes this third petition as a request for reconsideration of its earlier denial of the second petition.' The court then stated that there was 'absolutely nothing new that [p]etitioner has asserted in the third petition' and, on that basis, the petition was denied with prejudice.

"On March 17, 2023, the court filed an order addressing what it described as petitioner's fourth petition. The court again determined that the 'bases for this fourth petition [are] identical to that of the previous three petitions. The court therefore construes this fourth petition as a request for reconsideration of its earlier denial of the third petition even though the third petition was denied with prejudice.' The court then noted there was 'absolutely nothing new that [p]etitioner has asserted in the fourth petition' and, on that basis, the petition was denied with prejudice." (*People v. Lopez* (Feb. 7, 2024, F086154) [nonpub. opn.] (*Lopez*).)

On appeal, the People conceded the court erred in denying petitioner's facially sufficient petition without appointing counsel. The People further conceded that the record did not establish petitioner's ineligibility for resentencing as a matter of law. We accepted the People's concessions, reversed the court's March 16, 2023, and March 17, 2023 orders denying petitioner's September 8, 2022 petition for resentencing, and remanded with directions to appoint counsel and issue an order to show cause. (*Lopez*, *supra*, F086154.)

On remand, counsel was appointed for petitioner; the court issued an order to show cause and set the matter for an evidentiary hearing. The People filed an opposition to the petition on the grounds the evidence showed petitioner was (1) a principal in the murder who acted with malice, (2) the actual killer, and (3) a major participant in the underlying felonies and acted with reckless indifference to human life.

The People relied on evidence presented at petitioner's preliminary hearing, as well as statements made by petitioner at two parole board hearings. At a parole board hearing held on July 22, 1997, petitioner confirmed that he struck Fernandez over the head with a board, then transported Fernandez to an isolated location and beat him again. Petitioner explained:

> "Me and the victim, we got in an argument so he – me and him, we started fighting. Then I was asleep when he came – he came from the house, he was armed with a two-by-four and then he started hitting me. And I got up and I grabbed the two-by-four and I hit him in the head. Then I think he died. We put him in the car and we went out to the field. Then we (inaudible), then we come back and get him, again beat him up. Then we take him and put him in the trunk of the car and then we put make a hole in the ground, and put the body like that, and then we go."

At a parole board hearing on December 3, 2014, petitioner confirmed that he and Fernandez got into a fight because Fernandez owed him $300. During the argument, petitioner grabbed a two-by-four and hit Fernandez in the head, then put him in the car

and took him to a field to bury him.  He stated that Fernandez had a knife and he was acting in self-defense.

In his hearing brief, petitioner argued the petition should be granted because he did not act with intent to kill or reckless indifference to human life.

The evidentiary hearing was conducted on July 19, 2024.  The court admitted the preliminary hearing and parole board hearing transcripts into evidence.  No further argument or evidence was presented.  The court denied the petition as follows:

> "I find that the [petitioner] was the actual killer.  He basically admitted that he struck the decedent with a board, I think it was a two-by-four, in the head.  He then, under the guise of taking the body to the hospital, took the body out into an orchard and then later returned to the orchard and buried the body.  There was someone else involved, but this does not appear to be a situation in which he was convicted based on felony murder rule theory. He was directly involved.  He directly caused the death of another person."

## DISCUSSION

### I.  *Delgadillo* Procedure

In *People v. Wende* (1979) 25 Cal.3d 436, our Supreme Court held that "Courts of Appeal must conduct a review of the entire record whenever appointed counsel submits a brief on direct appeal which raises no specific issues or describes the appeal as frivolous."  (*Delgadillo*, *supra*, 14 Cal.5th at p. 221.)  The *Wende* procedure applies "to the first appeal as of right and is compelled by the constitutional right to counsel under the Fourteenth Amendment of the United States Constitution."  (*Ibid.*)

In *Delgadillo*, the Supreme Court held that the *Wende* independent review procedure is not constitutionally required in an appeal from a postconviction order denying a section 1172.6 petition for resentencing because the denial does not implicate a defendant's constitutional right to counsel in a first appeal as of right.  (*Delgadillo*, *supra*, 14 Cal.5th at pp. 222, 224–226.)  The court further found that general due process principles regarding fundamental fairness do not compel a *Wende* independent review of the order.  (*Id.* at pp. 229–232.)  However, if a no-issues brief is filed in such an appeal

and the defendant then "files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion." (*Id.* at p. 232.) The reviewing court is not required to conduct "an independent review of the entire record to identify unraised issues" but may do so at its discretion. (*Ibid.*)

## II. Section 1172.6 Procedure

Effective January 1, 2019, Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill No. 1437) "altered the substantive law of murder in two areas." (*People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).) First, the bill narrowed the scope of the felony-murder rule "so that a 'participant in the perpetration or attempted perpetration of a [specified felony] in which a death occurs' can be liable for murder only if '[t]he person was the actual killer'; '[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree'; or '[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life.' " (*People v. Arellano* (2024) 16 Cal.5th 457, 467–468, quoting § 189, subd. (e)(1)–(3).) Second, the bill "eliminate[d] liability for murder as an aider and abettor under the natural and probable consequences doctrine" by requiring that, "except in cases of felony murder, 'a principal in a crime shall act with malice aforethought' to be convicted of murder." (*Curiel*, at p. 449, quoting § 188, subd. (a)(3).) Now, " '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Curiel*, at p. 449.)

Additionally, Senate Bill No. 1437 added former section 1170.95, now section 1172.6, to provide a procedure for those convicted of a qualifying offense " 'to seek relief' where the two substantive changes described above affect a defendant's conviction." (*Curiel*, *supra*, 15 Cal.5th at p. 449.) Under section 1172.6, an offender

9.

seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *People v. Strong* (2022) 13 Cal.5th 698, 708.) If the sentencing court determines the petitioner has made a prima facie showing, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction. (§ 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) "The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).)

"Ordinarily, a trial court's denial of a section 1172.6 petition [following an evidentiary hearing] is reviewed for substantial evidence. [Citation.] Under this standard, we review the record ' " 'in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " ' [Citation.] But where there is an issue as to whether the trial court misunderstood the elements of the applicable offense, the case presents a question of law which we review independently." (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)

**III. Petitioner's Contentions**

**A. Coerced Plea**

Petitioner contends he was coerced by his former counsel to accept a plea. He contends the plea was coerced because his counsel informed him he would be convicted of first degree murder and sentenced to death if he proceeded to trial.

As stated, section 1172.6 provides a resentencing procedure for persons convicted under an imputed malice theory eliminated by Senate Bill No. 1437. It does not provide relief on grounds of a coerced plea. Accordingly, this contention does not provide a basis for relief in this appeal.

**B. Lack of Evidence**

Petitioner makes several claims regarding the state of the evidence, none of which are supported by the record. He contends Detective Moralez stated in the trial court that the police had no evidence against him, and he further contends the district attorney did not present any evidence against him. He contends all the evidence admitted in the trial court pertained to Perez. He seemingly contends evidence such as "bloodstains, surveillance footage, or finger print" was required to convict him of murder. He further contends the trial court at one point stopped the preliminary hearing and stated it was because the witness was lying. He contends Perez confessed to being the killer. He points out there were some inconsistencies between the testimony of percipient witnesses and statements they made to police.

The prosecutor was not required to present forensic evidence of bloodstains, surveillance footage, fingerprints, shoe prints, or a confession by petitioner to support petitioner's conviction. The trial court's findings are supported by substantial evidence in the form of extensive eyewitness testimony that petitioner was the actual killer in this case. This evidence was not undermined by minor inconsistencies between the witnesses' testimony and their initial reports to law enforcement.

11.

Substantial evidence supports the court's finding that petitioner was the actual killer. Additionally, we have conducted an independent review of the record and found no arguable error that would result in a disposition more favorable to petitioner. The court did not err in denying the petition.

## DISPOSITION

The order denying the petition for resentencing is affirmed.